652 P.2d 544

David J. KORMAN, Petitioner,

v.

The Honorable Gerald J. STRICK, Judge of the Superior Court of Maricopa County, Arizona, Respondent,

Dorothy M. KORMAN, Real Party in Interest.

No. 16079–SA.

Supreme Court of Arizona, In Banc.

Oct. 8, 1982.

Sternberg, Sternberg, Rubin & Schleier, by Howard A. Singer, Phoenix, for petitioner.

Murray Miller, Phoenix, for real party in interest.

GORDON, Vice Chief Justice:

Petitioner David J. Korman brings this special action from a contempt finding against him by the respondent judge. Having taken jurisdiction under Ariz. Const. Art. 6, § 5(1), we vacate the jail sentence imposed on petitioner.

Petitioner's wife filed for a dissolution of their marriage in February, 1981. In connection with the dissolution proceeding, she made several discovery requests with which petitioner did not comply. Petitioner's wife then obtained court orders compelling discovery, but petitioner failed to fully comply with these orders. Finally, petitioner's wife filed a motion to compel discovery and requested sanctions against petitioner. The respondent judge granted the motion on March 10, 1982 and ordered petitioner to pay his wife $500 for attorney's fees incurred in bringing the motion. Respondent gave petitioner until April 30, 1982 to pay the money.

Petitioner did not pay, and his wife petitioned on May 10, 1982 for an order to show cause why he should not be held in contempt for nonpayment. A hearing took place on June 2, 1982. Respondent found petitioner in contempt and ordered him to serve a 30 day jail sentence. When asked by petitioner's counsel if the contempt could be purged by payment of the $500 due, respondent replied, "The time to purge was when I ordered him to pay." Respondent then added, "I made that order * * * not as a hammer to get $500.00, I made it because of the offense to this Court, not [petitioner's wife's counsel], not [petitioner's wife], but the dignity of this Court. The time to pay it was when he was ordered to pay it."

Petitioner was allowed to bring a motion for rehearing on June 3. It is uncontested that petitioner did pay the $500 on June 2. At the June 3 rehearing, respondent made the following remarks concerning petitioner's attempt to purge himself of the contempt:

"I found yesterday, and I still find today that there was an order entered that was clear in its terms requiring a specific act to be performed by a specific time; that act was the payment of money. I found further that as of yesterday that act hadn't been done.

"And I further found yesterday and find today that the act wasn't done, despite in my view of the evidence the ability to do the act. And I specifically found yesterday that Mr. Korman had the ability to pay $500; to obtain that amount of money by that time.

"Now as a result I found that he was in contempt. *And that is an indirect civil contempt.*

"In consequence of that I ordered that he serve a term in the County Jail, and did not in my discretion give him the option of purging himself, because it is not my judgment that I should be a bill collector. And I imposed that term as a punitive measure clearly. And I reiterate, it is not my intention it be remedial, except to the extent that punishment may have some remedial effect. But clearly I intended it as punishment.

\*     \*     \*     \*     \*     \*

"Yesterday was the day to bite that apple once. Today is the day to bite the bullet. I don't give you another bite of the apple.

\*      \*      \*      \*      \*      \*

" \* \* \* I don't think I have to grant a right to purge as a matter of law. I think I have discretion to do what I did.

"If it will assist you, and I suspect it will assist you, I did what I did, because I believe I have a right to do it. I made the findings I made. *It is a civil contempt, an indirect contempt.*"

(Emphasis added.) (Reporter's Transcript).

Respondent stayed the commencement of the sentence to allow petitioner to bring a special action. Petitioner did so arguing that because the contempt was a civil contempt, he had an absolute right to purge himself. We agree.

■ Before addressing the merits of petitioner's claim, we note that his wife has been improperly named as the real party in interest as she has no legally cognizable interest in this special action. Because she has received the $500 petitioner was ordered to pay, she no longer has a legal interest in petitioner's incarceration for civil contempt. If the contempt was criminal, she would still have no interest in this action as the petitioner's release from criminal incarceration would not affect any right of hers. Thus, she should not have been named as real party in interest, and a response should not have been filed on her behalf to oppose petitioner's petition.

Returning to the merits of the case, this Court stated in *Ong Hing v. Thurston,* 101 Ariz. 92, 416 P.2d 416 (1966):

"Contempt has been broken down into four classifications: criminal contempt is the commission of a disrespectful act directed at the court itself which obstructs justice, \* \* \* civil contempt is the disobeyance of a court order directing an act for the benefit or advantage of the opposing party to the litigation, \* \* \* direct contempt is an act committed in the presence of the court or so near thereto as to obstruct the administration of justice, \* \*

and constructive or indirect contempt is an act committed outside the presence of the court, \* \* \*."

*Id.* at 98, 416 P.2d at 422.

■ A failure to pay attorney's fees owed as a result of a court order to the opposing party is a constructive contempt. *In re Quan,* 39 Ariz. 13, 3 P.2d 522 (1931). Such a contempt, as is often the case, may be civil and/or criminal depending on the facts of the case. *See Ong Hing, supra.*

In the instant case, there is no doubt that the respondent judge held petitioner for an indirect, civil contempt. The facts would support a finding of civil contempt, and respondent twice expressly stated in the quoted excerpt that he had found an indirect, civil contempt. Although respondent made some remarks consistent with a finding of criminal contempt, we have no reason to doubt that he was aware what he was doing when he characterized the contempt as civil in nature.

■ The distinction between criminal and civil contempt is essential to a resolution of this case.

"[I]mprisonment for civil contempt is ordered where the defendant has refused to do an affirmative act required by the provisions of an order which, either in form or substance, was mandatory in its character. Imprisonment in such cases is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. The decree in such cases is that the defendant stand committed *unless and until he performs the affirmative act required by the court's order.*

"For example: If a defendant should refuse to pay alimony, \* \* \* he could be committed until he complied with the order. \* \* \* If imprisoned, as aptly said in *Re Nevitt,* 54 C.A.A. 622, 117 Fed. 451, 'he carries the keys of his prison in his own pocket.' *He can end the sentence and discharge himself at any moment by doing what he had previously refused to do.*"

*Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797, 806 (1911) (emphasis added). A criminal contempt is found solely for punishment purposes, *Gompers,* and nothing the contemnor can do will free him or her before the term of confinement imposed has run.

■ It is apparent from reading the last paragraph of respondent's quoted June 3 remarks that he believed that he had the discretion to continue imprisonment in a civil contempt case even though the contemnor obeyed the relevant court order when faced with a jail sentence. A continued sentence under such circumstances would be punitive only. But the purpose of finding a person in civil contempt is to coerce that person to do or refrain from doing some act. If the means of the coercion, either a jail term or a cumulative fine, cannot be removed by compliance with the court's order, the coercive effect of a civil contempt finding will be weakened. A contemnor who cannot change his or her position by complying with the court's order will have no motive to comply. Therefore, we will continue to follow the rule of *Gompers, i.e.,* a civil contemnor is always purged of the civil contempt and coercive force when he or she complies with the court's order. A contempt finding intended solely for the purpose of imposing punishment must be a criminal contempt finding.

■ In the instant case, then, petitioner purged himself of the civil contempt and jail sentence when he paid the $500 as previously ordered by the court. Because petitioner was found to be in civil contempt, respondent cannot require petitioner to serve the jail term solely for punitive purposes. Of course, nothing we have said in this opinion would preclude a criminal contempt prosecution against petitioner under Ariz.R.Crim.P. 33. In an indirect, criminal contempt case however, petitioner would have additional rights, *e.g.,* the right to notice that he faces a criminal rather than a civil charge and the right to require the proof against him to be beyond a reasonable doubt.

The prayer for relief is granted and the jail sentence is vacated.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.