177 P.3d 860

Melody Lynn MUNARI and Brian Munari, Petitioners,

v.

The Honorable Jeffrey A. HOTHAM, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge,

John P. Winiarski and Judi L. Winiarski, Real Parties in Interest.

No. 1 CA–SA 07–0268.

Court of Appeals of Arizona, Division 1, Department A.

Feb. 19, 2008.

Katz & Bloom P.L.C. By Norman M. Katz, Phoenix, Attorney for Petitioners.

Marc C. Cavness, Phoenix, Attorney for Real Parties in Interest.

## OPINION

SNOW, Judge.

¶1 Melody Munari ("Mother") and Brian Munari ("Step–Father"), the Petitioners, seek special action relief from the superior court's contempt order. For the following reasons, we accept jurisdiction and grant relief as to Step–Father but deny relief as to Mother.

## FACTUAL AND PROCEDURAL HISTORY

¶2 The superior court held Petitioners in contempt for not making Mother's child available for court-ordered visitation with the Real Parties in Interest, John P. and Judi L. Winiarski ("the Grandparents"), prior to relocating from Arizona to Missouri and for not providing telephone access thereafter. The Grandparents raised the minor child for the

first seven years of his life, after which Mother assumed parenting duties. On August 6, 2003, the Grandparents filed a Petition for Child Custody by a Non–Parent. While they were not awarded custody, they were eventually awarded visitation pursuant to Arizona Revised Statutes ("A.R.S.") sections 25–415 and 25–409 (2007).[1] The visitation award gave the Grandparents visitation for Memorial Day weekend, two weeks each summer, one week at Christmas, the second Sunday of each month, and the fifth weekend of every month that has five Saturdays.

¶ 3 Mother then began what became a long history of frustrating the visitation orders. On July 27, 2005, she was held in contempt of court and fined $1500 for ignoring those orders. On February 17, 2006, she was found in contempt again for her continuing violations of the orders and ordered to pay an additional $8500.

¶ 4 At the same hearing, Mother petitioned for and received the superior court's permission to relocate the child to Missouri, but was ordered to make him available for visitation with the Grandparents both before and after the move as a condition of relocation and as a condition of purging the prior findings of contempt. Mother failed to do so, and the Grandparents petitioned the court that she be held in contempt. On August 23, 2006, the court held Mother in contempt for violating the court's orders, imposed monetary sanctions of $500 per day until visitation was restored, and ordered her to pay the Grandparents' attorneys' fees. It also affirmed the previous monetary sanctions against Mother.

¶ 5 At the same hearing, Step–Father, who had not been a party to the action, moved to be joined. The court granted the motion and immediately declared him in contempt for having violated the same visitation orders. The court then imposed the sanctions and attorneys' fees order on Step–Father. The

sanctions were later calculated to be $15,300, plus interest. The attorneys' fees were set at $10,000, plus interest.

¶ 6 Petitioners moved to set aside the judgment, which the superior court substantially denied.[2] Petitioners subsequently filed a notice of appeal, but have since abandoned it. This special action followed.

▆ ¶ 7 We choose to accept special action jurisdiction because contempt orders are not appealable, and therefore there is no remedy by appeal. *See State ex rel. Dep't of Econ. Sec. v. Burton,* 205 Ariz. 27, 30, ¶ 18, 66 P.3d 70, 73 (App.2003) (treating an appeal from a contempt order as a petition for special action and accepting special action jurisdiction); *see also State ex rel. Romley v. Sheldon,* 198 Ariz. 109, 110, ¶ 2, 7 P.3d 118, 119 (App.2000).

## DISCUSSION

¶ 8 Petitioners raise two main challenges to the contempt order: (1) that the court could not hold Petitioners in contempt for denying the Grandparents visitation; and (2) that Step–Father could not be held in contempt because the contempt statute applies only to parents and, alternatively, because Step–Father was not subject to the orders that he was held in contempt for violating. We address each argument in turn.[3]

**I. Did the superior court improperly find Petitioners in contempt because grandparents may not assert the procedural rights involved in child relocations?**

¶ 9 Petitioners argue that the superior court lacked the jurisdiction to find them in contempt for violating the visitation orders— or even to have considered the propriety of Mother's relocation of the child. They rely on *Sheehan v. Flower,* 217 Ariz. 39, 170 P.3d 288 (App.2007), which held that the word "parent" as used in A.R.S. § 25–408 (2007)

---

1. We cite the current versions of the applicable statutes throughout this opinion because no material revisions have since occurred.

2. The court did reduce the sanctions from $500 per day to $50 per day, as the relevant statute imposed a $100 limit per violation. *See* A.R.S. § 25–414(A)(5) (2007).

3. Petitioners also argue that Step–Father was not properly served or given notice of the contempt proceedings against him and that the contempt petition failed to comply with Rule 92 of the Arizona Rules of Family Law Procedure. Because we afford Step–Father relief on other grounds, as explained below, we do not reach these arguments.

(governing the parental rights applicable in child relocations), does not include grandparents. We reject Petitioners' argument.

## A. The visitation orders were proper.

¶ 10 Grandparents' statutory visitation rights, pursuant to which the Grandparents here were granted visitation, do not automatically terminate upon a child's relocation. *See* A.R.S. § 25–409(F) (stating only that grandparent visitation rights "automatically terminate if the child has been adopted or placed for adoption"). Thus, while a relocation that is not contested by the non-relocating parent may not be challenged by a grandparent pursuant to A.R.S. § 25–408, the grandparent's visitation, as ordered, remains in place after the relocation unless otherwise modified by the superior court after hearing. In circumstances in which a grandparent has a right to visitation, both the grandparent and the court have the authority to enforce that continuing visitation through contempt proceedings even though the parent may choose to relocate the child. A.R.S. § 25–414(A)(1).

¶ 11 Mother argues, based on *Sheehan,* that "A.R.S. § 25–408 does not apply in grandparent visitation actions" and thus that "there was no jurisdiction for the trial court in this matter to have conditioned the relocation on compliance with [the] Grandparents' visitation [and] there was no jurisdiction for the court to have prevented the relocation." *Sheehan,* however, does not hold that the superior court has no jurisdiction to enforce a grandparent's existing visitation right after a relocation has occurred.

¶ 12 In *Sheehan,* a grandmother was awarded visitation with a mother's child. 217 Ariz. at 40, ¶ 3, 170 P.3d at 289. When the mother notified the grandmother that she was going to leave the state, the grandmother, pursuant to A.R.S. § 25–408, moved the superior court to prevent the mother from relocating with the child. *Id.* at ¶ 4; *see* A.R.S. § 25–408(D) ("Within thirty days after notice is made the nonmoving *parent* may petition the court to prevent relocation of the

child.") (emphasis added). The superior court declined, concluding that § 25–408 does not permit a grandparent to contest relocation, and then proceeded to establish a schedule for the grandmother's visitation. *Sheehan,* 217 Ariz. at 40, ¶¶ 6–7, 170 P.3d at 289.

¶ 13 We affirmed the superior court's decision that the statute did not allow a grandparent to prevent relocation, concluding that the word "parent" as used in A.R.S. § 25–408 is unambiguous and refers only to biological or adoptive parents, not to grandparents. *Id.* at ¶ 13. Thus, we held that § 25–408 "does not apply to grandparent visitation and [the] Grandmother was not entitled to enforce her visitation rights under it." *Id.* at ¶ 18.

¶ 14 In *Sheehan,* therefore, we simply concluded that a grandparent may not enforce visitation rights through a statutory mechanism conferred only upon "parents." *See id.* We did not hold that courts were unable to consider and accommodate visitation rights belonging to non-parents in determining whether to leave visitation in place, nor did we decide that when a parent seeking permission to relocate the child petitions the court to do so that the court may no longer consider the child's best interests in ruling on that petition.[4]

¶ 15 Here, Mother made just such a petition for relocation, requiring the court to determine the appropriateness of relocation pursuant to A.R.S. § 25–408. Section 25–408 explicitly provides that in deciding such a petition, "[t]he court *shall* determine whether to allow the parent to relocate the child in accordance with the child's best interests." A.R.S. § 25–408(G) (emphasis added). Thus, the courts are both empowered and obliged to consider the child's best interests when a parent moves to relocate a child, as Mother did here. "Best interests" is an encompassing concept and it allows a court to take into account all of the circumstances affecting a child's life. These circumstances not only include the child's relationship with the non-relocating parent, but the child's relationship

---

4. In fact, the superior court in *Sheehan* established a schedule for the grandmother's visitation even though it concluded that the grandmother could not attempt to prevent relocation pursuant to § 25–408. *See Sheehan,* 217 Ariz. at 40, ¶¶ 6–7, 170 P.3d at 289.

with others who have been awarded visitation. Those best interests are determined in the case of relocation by considering "[t]he extent to which moving or not moving will affect the emotional, physical or developmental needs of the child" and "[t]he potential effect of relocation on the child's stability." A.R.S. § 25–408(I)(6), (8).

¶ 16 In conditioning relocation on continuing grandparent visitation, the court found that such visitation was in the child's best interest. Specifically, it concluded that:

[T]he Maternal Grandparents have done an excellent job of parenting and more parenting than Mother. It is painfully obvious that Mother's poor relationship with her parents and her continual disregard for their visitation time with [the child] is extremely detrimental to [him].

The Court reluctantly allows the relocation, but the relocation is specifically conditioned upon Mother and [Step–Father] following the conditions of the following contempt purge order [requiring compliance with the Grandparents' visitation rights].

Implicit in the court's reasoning that deprivation of the Grandparents' visitation time is "extremely detrimental" to the child, and its specifically conditioning relocation on the contempt purge order (which required compliance with the Grandparents' visitation rights), is the finding that relocation without some form of visitation with the Grandparents would adversely affect the child's stability or his emotional, physical, or developmental needs. Under these circumstances, the court properly found that relocation was in the child's best interests only if some form of visitation with the Grandparents was accommodated. It thus had the authority to condition relocation on Mother's compliance with the visitation orders.

## B. Failure to comply with the court's orders was sanctionable through contempt proceedings.

¶ 17 The superior court has statutory authority independent of A.R.S. § 25–408's procedural protections to find a parent who refuses to comply with a visitation order in contempt. *See* A.R.S. § 25–414(A)(1) ("If the court ... finds that a parent has refused without good cause to comply with a visitation or parenting time order, the court shall ... [f]ind the violating parent in contempt of court."). In *Sheehan,* we made clear that a grandparent's inability to contest relocation pursuant to A.R.S. § 25–408 did not leave the grandparent without recourse when a relocating parent violated a visitation order:

Grandmother contends that interpreting A.R.S. § 25–408 as excluding non-parents would effectively leave grandparents without a remedy when their court-ordered visitation rights are violated. However, [§ 25–414] sets forth a number of remedies a court may employ if a parent has refused without good cause to comply with a visitation or parenting time order.

*Sheehan,* 217 Ariz. at 43, ¶ 17, 170 P.3d at 292 (internal quotations omitted). We also reiterated that "a court may exercise its inherent contempt power to remedy a violation of a court order." *Id.*

¶ 18 Here, the Grandparents argued in their superior court petition that Petitioners should be held in contempt and sanctioned for their failure to follow the court's visitation orders. Mother could properly be found in contempt and sanctioned for her refusal to comply with those orders because she is a parent who refused to comply with a visitation order without good cause. *See* A.R.S. § 25–414(A)(1). Step–Father also could be found in contempt and sanctioned pursuant to the court's inherent contempt power to remedy a violation of its orders (that is, if he were subject to those orders). *Sheehan,* 217 Ariz. at 43, ¶ 17, 170 P.3d at 292. Therefore, we reject Petitioners' argument that the court lacked the jurisdiction to make any contempt finding against them.

## II. Did the superior court improperly find Step–Father in contempt because Step–Father was not subject to the visitation orders?

¶ 19 Petitioners argue that Step–Father was not the subject of the visitation orders that the court found he violated. We reject any suggestion that the court lacked the inherent power to declare in contempt a person who is subject to the court's orders but

violates them. As stated in *Sheehan*, "a court may exercise its inherent contempt power to remedy a violation of a court order." 217 Ariz. at 41, ¶ 17, 170 P.3d at 290. Thus, if Step–Father was subject to the visitation orders, he could have been held in contempt for violating them.

¶ 20 Petitioners are correct, however, in arguing that Step–Father was not subject to the orders that the superior court found him to have violated, which served as the sole basis on which it declared him to be in contempt, and imposed sanctions and attorneys' fees. Step–Father was found in contempt for "failure to follow the Court Orders" as provided in its February 15 and February 17 rulings. However, Step–Father was not subject to these orders.

¶ 21 The February 15 order awarded the Grandparents several days of visitation before Mother moved to Missouri and also ordered ongoing telephone contact of ten minutes a day for three days per week. Additionally, the court ordered Mother to disclose to the Grandparents (and the court) her telephone number. All of these orders were directed at Mother, and in fact were framed as "a sanction for *her* contempt" for disobeying previous court orders. Thus, Step–Father was not subject to these orders.

¶ 22 The February 17 ruling did condition the relocation on both Mother and Step–Father fulfilling its contempt purge order. To the extent that the court was merely conditioning relocation upon visitation, Step–Father's failure to follow the court's visitation order could serve as a basis for the relocation order to be revoked, but would not necessarily give rise to a contempt citation. This is because, to the extent that the court intended to actually mandate compliance notwithstanding the relocation petition, it directed the contempt purge order solely at Mother: "It is further ordered that *Petitioner* may purge *herself* of this contempt by obeying the following Orders of visitation for

Maternal Grandparents." Because Step–Father had not previously been found in contempt, the contempt purge order was not directed at him. Step–Father, therefore, had no contempt to purge. Because the court's ruling is ambiguous on whether Step–Father's compliance with the contempt purge order was independently mandated or merely a condition of relocation, it was improper for the court to hold him in contempt for failing to comply with it. *See, e.g., Ex parte Chambers*, 898 S.W.2d 257, 260 (Tex.1995) ("In order to support a judgment of contempt . . . the underlying decree [must] set forth the terms of compliance in clear, specific and unambiguous terms so that the person charged with obeying the decree will readily know exactly what duties and obligations are imposed upon him."); *see also* 17 Am.Jur.2d *Contempt* § 157 (1990) (collecting cases); 17 C.J.S. *Contempt* § 39 (1999) (collecting cases).

¶ 23 To the extent that the court did intend to issue an order aimed at Step–Father, it is not clear that Step–Father had the ability to follow such an order. Step–Father is neither the biological nor the adoptive parent of the minor child and, given the record before us, apparently has no custodial rights to the child.[5] Thus, he could not legally force Mother to take action with respect to the child against her wishes. A person may not be held in contempt for failing to comply with an order if compliance is impossible. *Cf. Buck v. Myers*, 20 Ariz. App. 571, 575, 514 P.2d 742, 746 (1973) ("It is undoubtedly the general rule that in order for a violation of a judgment to constitute contempt, the thing ordered to be done must be within the power of the person against whom the judgment is directed."); *see also* 17 Am.Jur.2d *Contempt* § 161 (collecting cases); 17 C.J.S. *Contempt* § 21 (collecting cases). Since it appears that Step–Father lacked the capacity to follow the contempt purge order, he could not be held in contempt for failing to do so.[6]

---

5. Although the record does not include the original custody disposition between Mother and the child's father, if one existed, documents filed in the superior court refer to Mother alone as having custody of the child and the Grandparents have not suggested otherwise.

6. We do not mean to foreclose the possibility that StepFather could have been held in contempt for aiding and abetting Mother's violation of the court's orders. *See, e.g., State ex rel. Vacco v. Operation Rescue Nat'l*, 80 F.3d 64, 70 (2d Cir. 1996) ("In order for a court to hold a nonparty

¶ 24 Finally, Step–Father was not even a party to the case at the time of the February 17 ruling. He was not joined until August 23, 2006, the very date on which he was declared in contempt. While we recognize the possibility that non-parties may be held in contempt for the failure to follow court orders, we do not believe that the facts before us present such a case. Step–Father was not the petitioner seeking the court's permission to relocate the child nor was he the subject of the previous court orders or contempt findings. Mother was the only party before the court at the time, was the only person who had contempt to purge, was the only person who had petitioned for relocation, and was the only person who had the capacity to actually comply with the orders. Under these circumstances, we conclude that Step–Father was not subject to any court orders stemming from the February 17 ruling.

¶ 25 We review contempt orders for an abuse of the superior court's discretion, *Danielson v. Evans*, 201 Ariz. 401, 412, ¶ 40, 36 P.3d 749, 760 (App.2001), and conclude that finding a party in contempt for failing to follow orders to which that party was not subject is an abuse of discretion. *See Holt v. Hotham ex rel. County of Maricopa*, 197 Ariz. 614, 616, ¶ 11, 5 P.3d 948, 950 (App.2000) ("Civil contempt arises when a party refuses to do an act *he lawfully is ordered to do. ...*") (emphasis added). Because Step–Father was not subject to orders

from either the February 15 or February 17 rulings, it was an abuse of discretion for the court to hold him in contempt for failing to follow those orders.

¶ 26 The Grandparents argue that Step–Father could be found in contempt pursuant to A.R.S. § 25–314(D) (Supp.2007) ("The court may join additional parties necessary for the exercise of its authority."), as well as under Rule 38 of the Arizona Rules of Family Law Procedure ("[W]hen obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if a party."). We reject these arguments. Even assuming that § 25–314 applies,[7] Petitioners do not dispute that Step–Father could be joined; in fact, it was Step–Father himself who moved to be joined. Rather, Petitioners dispute that he could be found in contempt for failing to follow orders to which he was not subject. In the same way, Petitioners do not dispute the procedure by which an order may be lawfully enforced against a non-party. Rule 38 is inapposite because Step–Father *was not subject* to the orders that the superior court sought to enforce.

¶ 27 Because the superior court found Step–Father in contempt for failing to abide by visitation orders to which he was not subject, we find that the court abused its discretion. We therefore grant Step–Father relief from the finding of contempt, resulting sanctions, and attorneys' fees order.[8]

respondent in contempt of a court order, the respondent must either abet the party named in the order, or must be legally identified with him.") (internal quotations omitted), *cited in* 17 C.J.S. *Contempt* § 35; *see also* 17 Am.Jur.2d *Contempt* § 62 (collecting cases). Nevertheless, in this case the court did not take evidence on this point or otherwise hold Step–Father in contempt for that reason. Rather, the court was clear that it held him in contempt for his "failure to follow the Court Orders."

7. Section 25–314(A) applies to "a proceeding for dissolution of marriage or legal separation." Although the record does not contain the relevant documents, this action arises from the Grandparents' August 6, 2003, Petition for Child Custody by a Non–Parent.

8. The superior court justified the attorneys' fees award under both A.R.S. § 25–408(J) ("The court shall assess attorney fees and court costs against

either parent if the court finds that the parent has unreasonably denied, restricted or interfered with court-ordered parenting time.") and A.R.S. § 25–324(A) (Supp.2007) (stating that the court may order a party to pay attorneys' fees based on "the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings ...."). While attorneys' fees could be justified against Mother under § 25–408(J), Step–Father could not be ordered to pay attorneys' fees under § 25–324 "based upon the unreasonableness of [his] positions taken throughout the proceedings." Step–Father was ordered to pay attorneys' fees on August 23, 2006–the very date on which he was joined as a party. He had taken no positions as of that date that the court could have found unreasonable.

### III. Attorneys' Fees

¶ 28 Both parties request attorneys' fees on special action. We award the Grandparents costs and attorneys' fees against Mother pursuant to A.R.S. § 25–324(A) upon their compliance with Arizona Rule of Civil Appellate Procedure 21. We decline to award Mother or Step–Father their attorneys' fees.

### CONCLUSION

¶ 29 Because the superior court abused its discretion in finding Step–Father in contempt for violating orders to which he was not subject, and on that basis imposing sanctions and attorneys' fees, we grant Step–Father relief and vacate the court's contempt findings and orders as to him. Because the superior court had jurisdiction to find Mother in contempt, sanction her, and impose attorneys' fees, and because it did not abuse its discretion in doing so, we deny Mother relief.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and PHILIP HALL, Judge.

