228 P.3d 144

**Detention Officer Adam STODDARD,
Petitioner,**

v.

**The Honorable Gary E. DONAHOE, Judge
of the Superior Court of the State of
Arizona, in and for the County of Mari-
copa, Respondent Judge,**

Antonio Lozano, Real Party in Interest.

**No. 1 CA–SA 09–0300.**

Court of Appeals of Arizona,
Division 1, Department A.

April 6, 2010.

Andrew P. Thomas, Maricopa County Attorney by Thomas P. Liddy, Deputy County Attorney, Phoenix, Co–Counsel for Petitioner.

Iafrate & Associates by Michele M. Iafrate, Phoenix, Co–Counsel for Petitioner.

Terry Goddard, Attorney General by Hunter Perlmeter, Assistant Attorney General, Mary Jane Gregory, Assistant Attorney General, Phoenix, Attorneys for Respondent Judge.

Brent E. Graham, Maricopa County Legal Defender by Maria L. Schaffer, Deputy Legal Defender, Phoenix, Co–Counsel for Real Party in Interest.

Mehrens & Wilemon PA by Craig Mehrens, Amy Wilemon, Phoenix, Co–Counsel for Real Party in Interest.

*OPINION*

PORTLEY, Judge.

¶ 1 We are asked to decide whether Respondent Superior Court Judge Gary E. Donahoe erred when he found Maricopa County Detention Officer Adam Stoddard ("Stoddard") in indirect civil contempt and ordered him to publicly apologize to defense counsel, Ms. Joanne Cuccia ("Cuccia"), at a news conference or be jailed until he apologized. Based on the following, we accept special action jurisdiction, affirm the finding of indirect civil contempt, but grant relief in part by vacating the sanction and remanding the matter to the superior court for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 During Defendant Antonio Lozano's sentencing hearing, Cuccia was standing next to him at the podium and providing the court with her sentencing recommendation. Stoddard, who had been standing at the end of the jury box, moved to a spot behind and between the two counsel tables, a short distance from Cuccia. Stoddard then looked down at some papers partially sticking out of a file folder on the table for defense counsel. He pulled the papers further out and read them. He then signaled for Deputy Francisco Campillo to come over, and took the papers out of the file, handed them to the deputy and asked him to copy them.

¶ 3 Cuccia turned around as the deputy took the pages to be copied, and Stoddard held up his hands to her. Cuccia then asked to approach the bench and the judge directed Cuccia and Stoddard to a sidebar. After the sidebar, and in response to Stoddard's comments, Cuccia wanted to know what was taken from the folder on the table, why it had been taken and wanted it back.

¶ 4 The sentencing hearing came to a halt. Cuccia asked for a mitigation hearing for her client, and the court also set a status conference to address the "allegations [that] the [c]ourt's deputy [sic] took papers from defense counsel's table during the proceedings." Defendant, and Cuccia, sought an expedited show cause hearing. Judge Dona-

hoe, the presiding criminal judge, set an expedited hearing.[1]

¶ 5 After an extended evidentiary hearing at which Stoddard defended his actions as necessary to address or prevent a "security threat," Judge Donahoe found Stoddard in indirect civil contempt.[2] As a sanction, Stoddard was ordered to be incarcerated unless he arranged a news conference at a time convenient for Cuccia but not later than November 30, 2009, "on the north side of the Central Court Building [plaza] where he is to give Ms. Cuccia a sincere verbal and written apology for invading her defense file and for the damage that his conduct may have caused to her professional reputation." He was also required to prepare a press release and send it by fax and email to "all news media outlets (print and broadcast) serving Maricopa County at least 24 hours in advance of the news conference." [3]

¶ 6 Stoddard did not apologize and reported to jail. After waiting nine days, he filed a petition for special action challenging the superior court's civil contempt finding and its sanction. He sought and was granted a stay immediately by this court resulting in his release from jail.[4]

## JURISDICTION

■ ¶ 7 We can accept special action jurisdiction if the parties do not have a plain, adequate, or speedy remedy by appeal. *See*

*Patterson v. Mahoney,* 219 Ariz. 453, 455, ¶ 5, 199 P.3d 708, 710 (App.2008). A special action petition is the appropriate method to challenge a civil contempt order because the finding of contempt and civil sanctions are not appealable. *See* Ariz. R.P. Spec. Act. 1(a); *Trombi v. Donahoe,* 223 Ariz. 261, 265, ¶ 14, 222 P.3d 284, 288 (App.2009). Consequently, we exercise our discretion and accept special action jurisdiction.

## DISCUSSION

¶ 8 Stoddard raises three issues. First, did the superior court abuse its discretion by treating his act as a civil rather than criminal contempt? Second, did the superior court violate his due process rights during the hearing? Finally, did the purge condition violate his First Amendment right to free speech? [5] Stoddard does not, however, challenge the determination that his underlying conduct constituted contempt. *See, e.g., Hirschfeld v. Superior Court,* 184 Ariz. 208, 215, 908 P.2d 22, 29 (App.1995) (finding that "conduct which hinders, [or] obstructs ... the court in the administration of justice ... constitutes a contempt of court").

■ ¶ 9 We review the civil contempt finding and any sanction for an abuse of discretion. *See Munari v. Hotham,* 217 Ariz. 599, 605, ¶ 25, 177 P.3d 860, 866 (App.2008). We do not reweigh the evidence and we accept the factual findings made by the supe-

1. The sentencing judge vacated the status conference after Judge Donahoe set an expedited hearing.

2. A direct contempt occurred when Stoddard disrupted the sentencing hearing by his acts. *See Ong Hing v. Thurston,* 101 Ariz. 92, 98, 416 P.2d 416, 422 (1966). The sentencing judge could have taken immediate action. *See* 2 Daniel J. McAuliffe & Shirley J. Wahl, Arizona Practice: Civil Trial Practice § 4.10, at 74 (2d ed. 2001). However, the issue before Judge Donahoe was whether Stoddard's acts constituted indirect or constructive contempt because the acts occurred outside of his presence. *Ong Hing,* 101 Ariz. at 98, 416 P.2d at 422; *see generally,* Margit Livingston, *Disobedience and Contempt,* 75 Wash. L.Rev. 345, 351 (2000). The distinction does not affect our analysis.

3. The sanction ordered in the November 17, 2009 minute entry was modified two days later

in a minute entry entitled "Amendment of Ruling" which removed the provision that Cuccia had to find that the apology was sufficient.

4. We granted Judge Donahoe, as the respondent judge, the opportunity to file a response. *See Riley, Hoggatt & Suagee, P.C. v. English,* 177 Ariz. 10, 14, 864 P.2d 1042, 1046 (1993).

5. Stoddard also moved to prevent Cuccia from intervening in the contempt proceeding, participating in the stay hearing, responding to his petition or participating in the special action. Because Cuccia has an interest in protecting her legal file, her attorney-client privilege with her client and/or her work product, permissive intervention was appropriate. *See* Ariz. R. Civ. P. 24(b). However, even if it was error to allow Cuccia to intervene and participate in the proceedings, she was an indispensable participant in the events giving rise to the contempt proceedings, and any error was harmless.

rior court unless clearly erroneous. *See Imperial Litho/Graphics v. M.J. Enters.*, 152 Ariz. 68, 72, 730 P.2d 245, 249 (App.1986).

¶ 10 Both civil contempt and criminal contempt are governed by statute. Criminal contempt occurs when one "wilfully disobeys a lawful writ, process, order or judgment of a superior court by doing an act or thing therein or thereby forbidden, if the act or thing done also constitutes a criminal offense." Ariz.Rev.Stat. ("A.R.S.") § 12–861 (2003). Section 12–862 (2003) defines how a person should be charged for criminal contempt. Section 12–863 (2003) then outlines the rights available to a person charged with criminal contempt, including the right to a jury trial. The statute also defines criminal contempt as a class 2 misdemeanor and gives the person the right to appeal "as in criminal cases and the appeal shall stay execution of the sentence and the person found guilty of contempt, if sentenced to imprisonment, shall be admitted to bail." A.R.S. § 12–863.

¶ 11 Civil contempt is defined in § 12–864 (2003). The statute provides that:

> Contempts committed in the presence of the court or so near thereto as to obstruct the administration of justice, and contempts committed by failure to obey a lawful writ, process, order, judgment of the court, and all other contempts not specifically embraced within this article may be punished in conformity to the practice and usage of the common law.

A.R.S. § 12–864.

¶ 12 Stoddard contends that the superior court, in spite of the finding that he was in "in-direct civil contempt," actually found him in criminal contempt because the court impliedly found his contumacious conduct "lessens the dignity and authority of the court" pursuant to Arizona Rule of Criminal Procedure 33.1. The Rule is, as its comment notes, an amalgam of § 12–861 and *Ong Hing*, 101 Ariz. at 96, 416 P.2d at 420, and provides that a person can be held in criminal contempt for "wilfully disobey[ing] a lawful writ, process, order, or judgment of a court by doing or not doing an act or thing forbidden or required,

or who engages in any other wilfully contumacious conduct which obstructs the administration of justice, or which lessens the dignity and authority of the court." Ariz. R.Crim. P. 33.1.

¶ 13 Rule 33.1 defines another species of criminal contempt. As we stated in *Riley v. Superior Court*, if a contempt is "not within the bounds of A.R.S. Sec. 12–861, i.e., the contemptuous act is not a criminal offense by itself, [then] the provisions of Rule 33 . . . are applicable." 124 Ariz. 498, 499, 605 P.2d 900, 901 (App.1979).[6]

¶ 14 Although Judge Donahoe's finding could fall within the definition of Rule 33.1, the comment to the Rule notes that:

> The general distinction between civil and criminal contempt is the purpose for which the punishment is imposed. A person is imprisoned for civil contempt to force compliance with a lawful order of the court; he holds the keys to the jail and can gain release at any time by complying with the order. A criminal contempt citation, on the other hand, is intended to vindicate the dignity of the court. It is a criminal offense for which a specific punishment is meted out, over which the defendant has no control.

(Citations omitted.) Consequently, the comment to the Rule underscores the fact that our supreme court, in adopting Rule 33.1 and its comment, recognized that the classification of a contempt is not entirely defined by the underlying acts, but may depend on the nature of the sanction as well. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911)); *see generally* Edward Gregory Mascolo, *Procedures and Incarceration for Civil Contempt: A Clash of Wills Between Judge and Contemnor*, 16 New Eng. J. on Crim. & Civ. Confinement 171, 179 (1990) ("the classification of a contempt is not of the act of contempt, but rather of the nature of the contempt proceed-

---

**6.** A court also "has inherent powers, beyond any bestowed by statute or rule, to punish for contempt [including] . . . the power to maintain or-

der." *Hirschfeld*, 184 Ariz. at 215, 908 P.2d at 29.

ing and the sanctions imposed in light of the totality of the surrounding circumstances").

¶ 15 Mindful of the nature of contempt, we address whether Judge Donahoe erred by finding Stoddard in indirect civil contempt. Or, was it, as Stoddard maintains, necessarily criminal contempt because the offending act interrupted and interfered with the sentencing hearing?

¶ 16 Judge Donahoe found that Stoddard's conduct "disrupted and delayed the sentencing proceeding." He also determined that the conduct "impair[ed] the court's ability to deliver timely justice." Specifically, he found that Stoddard's conduct was unreasonable because "there was no security threat justifying the seizure of the documents" from Cuccia's file, nor was "there any evidence that a crime was being committed or about to be committed." In fact, he found that "[t]here was no immediate or future security threat that would have justified a reasonable detention officer in DO Stoddard's situation [to] remove[e], seiz[e] and cop[y] a document from a defense attorney's file."

¶ 17 Judge Donahoe then imposed a civil contempt sanction. Specifically, he ordered Stoddard to publicly apologize and if he did not, he would be jailed until he apologized. Because Judge Donahoe, as his amended ruling noted, put the "keys to the jail house door" into Stoddard's hands, *see Korman v. Strick*, 133 Ariz. 471, 474, 652 P.2d 544, 547 (1982), the sanction was for civil contempt. Consequently, the court did not abuse its discretion when it characterized the objectionable conduct and found Stoddard in indirect civil contempt.

¶ 18 Stoddard also contends that his due process rights were violated during the hearing. Specifically, he contends that he was prohibited from presenting all relevant evidence in his defense because the court did not allow him to use the documents he removed from Cuccia's file. We disagree.

¶ 19 During the hearing, Stoddard was given a full and fair opportunity to explain his actions. He testified, for example, that he

moved from the end of the jury box to a position behind Cuccia because, in light of Lozano's known history, he was concerned that Lozano might "act out" and because he kept looking or glaring at the prosecutor. The video recording of the hearing shows, however, that Lozano only looked towards the prosecutor while she gave her sentencing recommendation. Once Cuccia started to speak on his behalf, Defendant was looking down or towards the judge.

¶ 20 Stoddard also testified that, once he looked down and saw "four words"[7] on a piece of paper sticking out from Cuccia's file, he became concerned that Defendant had given his lawyer something that had not been subject to a security search. Specifically, Stoddard asserted he was concerned that the paperwork posed a security risk because the words he saw could have been a coded message; e.g., a way for a prison gang member to communicate with someone on the outside. Moreover, Stoddard claimed he thought the paperwork had not been searched even though he admitted that Lozano and any paperwork he brought to the hearing had been searched. Stoddard testified that based on the "totality of the circumstances," he made the decision to remove the paperwork from Cuccia's file.

¶ 21 On the second day of the hearing, Stoddard added that he was worried that Lozano might be trying to "solicit Ms. Cuccia to help him" even though he had no information that Cuccia was compromised in that regard. He also worried about Cuccia's ability to pass information to the public. In spite of his concerns, and without any departmental policy that would purport to direct or authorize a detention officer to remove documents from a lawyer's file, Stoddard did not talk to the assigned courtroom deputy, Deputy Campillo, or the sentencing judge before removing the documents from the file.

¶ 22 Judge Donahoe reviewed the subject documents *in-camera*, ordered them re-

---

7. Defendant formally waived the attorney-client privilege for the four words, which were "going to steal" and "money."

turned to Cuccia, and kept a copy under seal.[8] He did not find any reason to vitiate the attorney-client privilege protection of the documents. Although Judge Donahoe did not release the documents because Defendant did not waive the attorney-client privilege beyond the four words Stoddard initially saw, Stoddard knew the contents of the documents and was given a full and complete opportunity to explain why he removed them from Cuccia's file, thereby disrupting the sentencing hearing. In fact, Stoddard testified that he read the documents, which were letters from Defendant to Cuccia, and that he did not find anything in the letters which were indicative of a future crime, an illegal communication, that Cuccia did anything wrong or was a security risk. Consequently, we find no due process violation.

¶ 23 Stoddard next contends that the civil contempt sanction violates his First Amendment rights. We first review the reasonableness of the sanction because "[i]t is sound judicial policy to avoid deciding a case on constitutional grounds if there are nonconstitutional grounds" to resolve an issue. *Goodman v. Samaritan Health Sys.*, 195 Ariz. 502, 505, ¶ 11, 990 P.2d 1061, 1064 (App.1999); *see also State v. Yslas*, 139 Ariz. 60, 63, 676 P.2d 1118, 1121 (1984).

¶ 24 Any sanction that is imposed for civil contempt must be designed to coerce the person to do or to refrain from doing some act. *See Korman*, 133 Ariz. at 474, 652 P.2d at 547. Equally important is that the sanction must fit the particular circumstances of the contempt. *See Hubbard v. Fleet Mortgage Co.*, 810 F.2d 778, 782 (8th Cir.1987); *In re Grand Jury Witness*, 835 F.2d 437, 443 (2d Cir.1987).

¶ 25 Here, the record does not support the sanction imposed because the sanction does not attempt to remedy the disruption to the sentencing hearing and/or ensure Stoddard will not repeat his illegal acts. Although the sanction focuses on the violation of the attorney-client privilege, it focuses more on Cuccia's subjective perception that her reputation might have been damaged as a result of the electronic public dissemination of Stoddard's acts and subsequent media commentary. Specifically, Judge Donahoe found that Cuccia was concerned about her legal reputation because the news media had now "lumped [her] in with" other lawyers who had been arrested for incidents of criminal conduct with or on behalf of their clients. There is, however, no evidence in the record that Cuccia's reputation was tarnished by the incident.

¶ 26 We recognize the difficulty in fashioning an appropriate sanction given the nature of Stoddard's contumacious conduct. Instead of ordering Stoddard to call a press conference and apologize to Cuccia, the court should have considered a sanction that more appropriately fit the circumstances of the contempt.[9] Because the evidence in the record does not support the sanction, we vacate the sanction and remand the matter to the superior court to fashion an appropriate sanction for the indirect civil contempt.

## CONCLUSION

¶ 27 Based on the foregoing, we accept special action jurisdiction and affirm the finding that Detention Officer Stoddard commit-

---

8. The documents in question were, ·in fact, handwritten letters or notes from Defendant to Cuccia.

9. Cuccia had recommended a fine as an appropriate sanction. A fine payable to the court, coupled with an appropriate purge term giving Stoddard the ability to avoid paying the fine, would be consistent with *Trombi*. Without limiting the court's discretion to impose a sanction tied more closely to the problems caused by the contumacious conduct, the court might have required Stoddard to receive additional training in courtroom decorum, including the nature, purpose, and sanctity of the attorney-client privilege. Additionally, the court could consider having Stoddard tell the sentencing judge in open court what he admitted under examination by his lawyer: If he could do things over, he would either ask to approach the bench and apprise the court of his concerns or he would call his superiors about obtaining a warrant before independently deciding to invade Cuccia's file. In fact, Stoddard's counsel stated at oral argument that Stoddard would have no First Amendment objection to stating publicly that which he had stated under oath.

ted an act properly designated as indirect civil contempt. We, however, vacate the sanction that required Stoddard to call a press conference and publicly apologize to Cuccia or be jailed, and remand the matter back to the superior court for further proceedings consistent with this opinion.

CONCURRING: LAWRENCE F. WINTHROP and MARGARET H. DOWNIE, Judges.