NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Matter of:

JAKE TREPTOW, *Petitioner/Appellee*,

*v.*

TABITHA VITELLARO-MARTORELL, *Respondent/Appellant*.

No. 1 CA-CV 25-0421 FC

FILED 05-07-2026

Appeal from the Superior Court in Maricopa County
No. FC2022-091567
The Honorable Charlene D. Jackson, Judge

**SPECIAL ACTION JURISDICTION ACCEPTED; RELIEF GRANTED
IN PART, DENIED IN PART**

COUNSEL

The Shaw Law Group PLLC, Gilbert
By Bryan C. Shaw
*Counsel for Petitioner/Appellee*

Tabitha Vitellaro-Martorell, Tempe
*Respondent/Appellant Pro-Se*

---

## MEMORANDUM DECISION

Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Veronika Fabian joined.

---

**H O W E**, Judge:

**¶1**         Tabitha Vitellaro-Martorell ("Mother") appeals the family court's contempt findings and award of attorney's fees to Jake Treptow ("Father"). For the reasons below, we affirm in part and remand in part for proceedings consistent with this decision.

### FACTS AND PROCEDRUAL HISTORY

**¶2**         Father and Mother share two minor children, born November 2021 and August 2023. The parents were not married and have a long history of conflict. The parties agreed to mediate in 2022 and the family court entered their agreed upon final orders for joint legal decision-making and equal parenting time for their first child. The parties also agreed they would have telephone access to their first child during their normal waking hours when with the other parent.

**¶3**         After their second child was born, both parties moved to amend the parenting time and child support orders. The family court held an evidentiary hearing and, in September 2024, continued joint legal decision-making over the children, adjusted their equal parenting schedule, and ordered Father to pay child support.

**¶4**         The family court also ordered the parties to communicate through Our Family Wizard and set out behavioral and length guidelines for their messages. The guidelines required messages to be respectful, avoid name calling, criticizing, and put-downs. The parties were limited to two initiated messages and two responses per day. Last, the court required the receiving party to respond in a timely manner, generally on the same day or within eight hours. The court did not address telephone contact with the children.

**¶5**         The family court further found that "Mother without good cause willfully denied Father 28 days of parenting time." The court awarded Father 12 days of makeup parenting time "at a rate of one 24-hour

period per month during her scheduled three days of parenting time weekends for twelve months."

¶6           Mother moved to reconsider the physical custody schedule so she could obtain consistent childcare. The family court agreed, adjusting her parenting time schedule. The new schedule provided that Mother would have the children from Tuesday afternoon to Thursday morning and Saturday morning to Monday morning. The court did not alter the make-up parenting schedule.

¶7           Mother and Father's antagonism continued. Both parents excluded the other from the children's medical decisions. Mother sent messages that exceeded the guidelines' length limits, violated the daily message cap, and disparaged Father's mother. Mother also offered Father's make-up time in less than 24-hour increments, provided make-up options with little advance notice, and pressured Father to forfeit the time. Father blocked Mother from goodnight calls with the children.

¶8           Both parents petitioned for enforcement and contempt. Father argued that Mother was in contempt for obstructing his make-up days, withholding the children's social security cards, and violating the communication guidelines. Mother argued that Father blocked goodnight phone calls with the children, disregarded orders requiring approval for third-party babysitters, ignored her messages requiring replies, and excluded her from the children's medical decisions.

¶9           The family court held an evidentiary hearing in March 2025. It found Mother in contempt regarding make-up parenting time, the communication guidelines, and medical decision-making. The court found Father in contempt concerning medical decision-making and third-party babysitters. It rejected Mother's claim about the nighttime phone calls because the calls were not incorporated into the 2024 final orders and Father's social security claim because he had alternative means of getting the cards. Last, the court awarded Father his attorney's fees pursuant to A.R.S. § 25-414(C) to be reduced for his own contemptuous conduct. Neither party requested findings of fact or conclusions of law. *See* Ariz. R. Fam. Law P. 82. Mother filed a notice of appeal and an amended notice of appeal.

## DISCUSSION

### I.      Jurisdiction

¶10      "We have an independent duty to determine whether we have jurisdiction over an appeal." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 236 Ariz. 568, 576 ¶ 15 (App. 2015). Mother filed the instant appeal challenging the family court's contempt findings and attorney's fee sanction. Our jurisdiction is limited to that specifically provided by statute, *Brionna J. v. Dep't of Child Safety*, 247 Ariz. 346, 349 ¶ 7 (App. 2019), and "contempt and civil sanctions are not appealable," *Stoddard v. Donahoe*, 224 Ariz. 152, 154 ¶ 7 (App. 2010). Although Mother filed an appeal, special action review is the appropriate avenue for review. *Stoddard*, 224 Ariz. at 154 ¶ 7. We accept special action jurisdiction because Mother has no other remedy by appeal.  *See* Ariz. R.P. Spec. Act. 11(e), 12(a).

¶11      Mother argues that the court erred by (1) holding her in contempt regarding medical decision-making without Father raising the issue, (2) finding her in contempt for failing to provide make-up days despite granting the motion for reconsideration, (3) finding her in contempt for violating the communication guidelines, (4) rejecting her contempt arguments regarding goodnight calls, (5) failing to rule on Father's violations of the communication guidelines, and (6) awarding attorney's fees to Father without specific findings. We address each issue in turn.

### II.      Medical Decision Making

¶12      Mother first argues that the family court violated her due process rights by holding her in contempt regarding the medical decision-making without Father raising the issue in his petition. Due process claims are issues of law, which we review de novo.  *Mack v. Cruikshank*, 196 Ariz. 541, 544 ¶ 6 (App. 1999).  Due process requires "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Curtis v. Richardson*, 212 Ariz. 308, 312 ¶ 16 (App. 2006).

¶13      Mother is correct that Father did not raise medical decision-making as an issue in his contempt petition. Her argument ignores, however, that she raised the issue in her petition. Mother put medical decision-making at issue and should have reasonably expected Father to contest her allegations with evidence of her own misconduct. Both Mother and Father presented evidence of each other's medical decision-making misconduct at the evidentiary hearing. Therefore, the family court afforded Mother due process before finding her in contempt.

**III. Contempt Findings**

**¶14** Mother next challenges the family court's contempt findings regarding make-up days, violations of the communication guidelines, and goodnight calls. We review a civil contempt finding for abuse of discretion. *Stoddard*, 224 Ariz. at 154 ¶ 9. We accept the family court's factual findings unless clearly erroneous. *Id.* at 154–55 ¶ 9. The court abuses its discretion by committing legal error or when the record lacks competent evidence to support its decision. *Woyton v. Ward*, 247 Ariz. 529, 531 ¶ 5 (App. 2019).

**¶15** Contempt is broken down into four classifications. *Ong Hing v. Thurston*, 101 Ariz. 92, 98 (1966). As relevant here, "civil contempt is the disobeyance of a court order directing an act" and "indirect contempt is an act committed outside the presence of the court." *Id.* A finding of civil contempt requires finding the contemnor "(1) has knowledge of a lawful court order, (2) has the ability to comply and (3) fails to do so." *Lund v. Donahoe*, 227 Ariz. 572, 583 ¶ 41 (App. 2011).

A. Make-Up Days

**¶16** Mother argues that she was not in contempt with respect to make-up days because the family court's grant of reconsideration rendered the court's earlier make-up parenting time order ambiguous.

**¶17** The family court's final orders required "Mother to provide one day of makeup parenting time at a rate of one 24-hour period per month during her scheduled three days of parenting time weekends." Following its order, Mother asked Father to abandon his make-up time, offered time with little advance notice or in less than 24-hour increments, and told Father if he rejected her options the time was forfeited. The court concluded that this conduct was willful and contemptuous and the record supports its finding.

**¶18** Mother argues that she did not willfully violate a court order because the family court's make-up time order became ambiguous when it adjusted the parenting-time schedule following her motion for reconsideration. Not so. The court's grant of reconsideration did not alter her obligation to facilitate make-up days. While Mother may plead confusion since her physical-custody days changed, the family court assessed her testimony and found that she simply "does not want Father to have the time." The family court is in the best position to examine the witness' credibility and we defer to its determinations. *Hurd v. Hurd*, 223 Ariz. 48, 52 ¶ 16 (App. 2009). We discern no abuse of discretion.

**B.**     **Mother's Communication Guidelines Violations**

**¶19**     Mother further argues that the family court erroneously found her in contempt for violating the communication guidelines.

**¶20**     The family court ordered both parents "shall follow the communication guidelines." As relevant here, the guidelines require messages to be brief, informative, and respectful. Further, each parent was limited to two new messages and two responses per day.

**¶21**     The court found that Mother's messages violated these guidelines. The record supports the court's findings that some of Mother's messages exceeded the guidelines limits and disparaged Father's mother.

**¶22**     Mother argues that the guidelines were advisory and subjective. We are not persuaded. The parties were ordered to follow the guidelines and whether particular messages violated the guidelines is a fact question for the family court to decide. *Stoddard*, 224 Ariz. at 154–55 ¶ 9. Our review is limited to whether the court committed legal error and whether the record supported its decision. *Woyton*, 247 Ariz. at 531 ¶ 5. We discern no abuse of discretion.

**C.**     **Goodnight Calls**

**¶23**     Mother next argues the family court erred by finding that no order required goodnight calls.

**¶24**     Here, the family court erroneously found that the order for goodnight calls was part of the temporary orders and thus terminated upon entry of the court's final decree. *See* Ariz. R. Fam. Law P. 47(k)(1) ("Temporary orders . . . terminate and are unenforceable . . . following entry of a final decree."). Mother and Father agreed to telephone contact in the 2022 mediation. The court approved their mediation agreement and entered it as a final judgment. *See* Ariz. R. Fam. Law P. 78(c). Following their second child's birth, the parties began operating under a series of temporary orders, none of which addressed or modified the telephone contact provision. Then, the court entered final orders for both children in September 2024 without a telephone contact provision. The court's ruling, however, contained the following provision:

> IT IS ORDERED affirming all Orders currently in place, except as expressly modified herein.

¶25          The telephone contact agreement was part of the 2022 mediation agreement, not any temporary orders that were terminated. The provision was still in place and not expressly modified by any subsequent agreement. Therefore, the provision was incorporated into the 2024 final orders and the court erred by finding it terminated. We vacate this portion of the under advisement ruling and remand so that the family court may consider whether Father had knowledge that this portion of the order was still enforceable. *See Lund*, 227 Ariz. at 583 ¶ 41 (civil contempt requires a finding that the contemnor "has knowledge of a lawful court order").

### IV.     Father's Communication Guidelines Violations

¶26          Mother next argues that the family court did not rule on Father's failure to respond to messages within the timeframe required by the guidelines provided. We review issues of law and the interpretation of rules de novo. *Vera v. Rogers*, 246 Ariz. 30, 33 ¶ 11 (App. 2018); *Michaelson v. Garr*, 234 Ariz. 542, 544 ¶ 5 (App. 2014).

¶27          After a party petitions the family court for contempt, the court may hold an evidentiary hearing where it "must" determine whether the petitioner has established elements of contempt. Ariz. R. Fam. Law P. 92(d)(2); *Lund*, 227 Ariz. at 583 ¶ 41.  Then, the court "*must* enter a written order granting or denying the petition for contempt." Ariz. R. Fam. Law P. 92(e) (emphasis added).

¶28          Here, the family court's communication guidelines ordered both parents to respond in a timely manner, generally the same day or within eight hours. Mother petitioned the family court to find Father in contempt for his failure to timely respond to her messages. She maintained her argument in her pre-hearing filings and presented supporting testimony at the evidentiary hearing. The court's under advisement ruling did not address Father's alleged violations. Mother properly petitioned and maintained her argument, and the court erred by failing to rule.

¶29          Father argues that the family court's failure to rule was not error because Mother did not request findings of fact or conclusions of law. *See* Ariz. R. Fam. Law P. 82(a). If a party does not request findings of fact or conclusions of law, this Court "must assume that the trial court found every fact necessary to support its ruling and must affirm if any reasonable construction of the evidence justifies the decision." *Horton v. Mitchell*, 200 Ariz. 523, 526 ¶ 13 (App. 2001) (quotation modified). Failure to request findings does not relieve the court of its obligation to make the decision. *Cf. State v. Martinez*, 226 Ariz. 464, 467 ¶ 12 (App. 2011) (holding that the trial

court abused its discretion in failing to address the petitioner's arguments). Here, we are not asked to assume the rationale underlying the court's decision; rather, Father asks us to assume the family court's ruling which we cannot do. Because the court erred, we remand so the court may supplement its ruling.

## V.    Attorney's Fees

**¶30**        Last, Mother challenges the family court's award of attorney's fees to Father pursuant to § 25-414. Because the award was premised on both parties' contempt, we vacate the award so the court may reevaluate each party's arguments on remand.

## CONCLUSION

**¶31**        We affirm the family court's contempt findings regarding medical decision-making, make-up days, and Mother's violations of the communication guidelines. We vacate the court's findings concerning telephone access and the attorney's fee award, and remand for reconsideration and to decide whether Father violated the communication guidelines.

**¶32**        Father requests his appellate attorney's fees and costs pursuant to Arizona Rule of Civil Appellate Procedure 21(a) and A.R.S. §§ 25-324 and -809(G). We decline his request in our discretion.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:        JR