222 P.3d 284

**Deputy Chief David TROMBI, Petitioner,**

v.

**The Honorable Gary E. DONAHOE, Judge of the Superior Court of the State of Arizona, in and for the County of Maricopa, Respondent Judge, Jamie Alvarez–Miranda, Real Party in Interest.**

No. 1 CA–SA 09–0260.

Court of Appeals of Arizona, Division 1, Department C.

Dec. 22, 2009.

Iafrate & Associates by Michele M. Iafrate, Phoenix, Co–Counsel for Petitioner.

Andrew P. Thomas, Maricopa County Attorney by Thomas P. Liddy, Deputy County Attorney, Phoenix, Co–Counsel for Petitioner.

Terry Goddard, Attorney General by Rex Nowlan, Section Chief Counsel, Hunter Perlmeter, Assistant Attorney General, Phoenix, Attorneys for Respondent Judge.

Allen Tunac & Coughlon PLLC by Shannon Peters, Phoenix, Attorneys for Real Party in Interest.

## OPINION

SWANN, Presiding Judge.

¶ 1 Deputy Chief David Trombi of the Maricopa County Sheriff's Office ("MCSO") brought this special action to challenge an order of the criminal presiding judge of the Maricopa County Superior Court finding him in contempt of court in his role as the officer in charge of prisoner transport. The contempt order, which the court viewed as civil in nature, arose from the court's finding that MCSO had failed in thirty cases to timely transport in-custody defendants to scheduled court proceedings.

¶ 2 We hold that the court had the authority to conduct the contempt proceedings at issue. We further hold that the Legislature has conferred upon the court the power to require the sheriff to transport inmates to court proceedings in a timely fashion. However, we hold that (with one exception) the contempt sanctions were invalid because they were in the nature of criminal (not civil) sanctions entered without compliance with Ariz. R.Crim. P. 33. Therefore, for the reasons set forth below, we accept jurisdiction and grant Trombi's request for relief in part and deny it in part.

## FACTS AND PROCEDURAL HISTORY

¶ 3 Pursuant to A.R.S. § 11–441(A)(4) (Supp.2008),[1] the sheriff has a mandatory duty to "[a]ttend all courts, except justice and municipal courts, when an element of danger is anticipated and attendance is requested by the presiding judge, and obey lawful orders and directions issued by the judge."

¶ 4 On November 5, 2007, Judge Anna M. Baca, then the criminal presiding judge of the Superior Court in Maricopa County, ordered MCSO to "comply with A.R.S. § 11–441(A)(4), all minute entries and morning calendar as of November 6, 2007 and each day thereafter." Judge Baca advised those present that "further proceedings will be held, including but not limited to Order to Show Cause and contempt proceedings for further failure to transport in-custody defendants and failure to attend criminal court morning calendar proceedings." MCSO did not seek review of Judge Baca's order.

¶ 5 On July 28, 2009, Judge Barbara Rodriguez Mundell, the presiding judge of the Superior Court in Maricopa County, sent a letter to Sheriff Joseph Arpaio. The letter addressed court delays caused by MCSO failures to transport in-custody criminal defendants to scheduled hearings and trials. Judge Mundell advised the sheriff that the court expected MCSO to follow the law and the orders of the court by timely transporting all in-custody defendants to their scheduled court appearances.

¶ 6 After receiving Judge Mundell's letter, MCSO continued to fail to timely transport many in-custody defendants to court appearances. In August 2009, the court issued orders to show cause regarding contempt in thirty criminal cases. Each order directed Trombi, as the overseer of MCSO's inmate transport operations, to appear before the criminal presiding judge, Judge Gary E. Donahoe, and show cause why he should not be held in contempt for violating Judge Baca's November 5, 2007 order.

¶ 7 On September 25, 2009, Judge Donahoe conducted a consolidated evidentiary hearing on the orders to show cause. At the outset of the hearing, Trombi's counsel acknowledged that Trombi is responsible for staffing the court with sufficient MCSO deputies to ensure the timely transport of in-custody criminal defendants to their scheduled court appearances. Counsel further stated: "[T]he real time decisions that are made are made by subordinates who actually make those decisions underneath the command structure of Deputy Chief Trombi and other deputy chiefs. And, of course, Deputy Chief Trombi will stand responsible for the appropriate decisions."

¶ 8 Trombi's counsel called MCSO Sergeant G.T. Czapski, a court security supervisor assigned to inmate escort duties, to testify about deputy staffing issues and the transport problems in the cases at issue. At the conclusion of the hearing, Judge Donahoe took the matter under advisement.

¶ 9 On September 28, 2009, Judge Donahoe entered a signed minute entry finding Trombi in contempt. Judge Donahoe specifically held that the contempt proceeding was civil in nature, and that any sanction imposed was not punitive, but rather remedial or intended to obtain compliance with earlier court orders. Judge Donahoe further noted that because the contempt was civil, the standard of proof was "clear and convincing evidence" and it was not necessary to find that Trombi's failure to comply with the orders was willful.

¶ 10 The court found that the evidence demonstrated that as the result of a "conscious decision," the court security division of MCSO is "chronically understaffed." In all but one of the cases at issue, Judge Donahoe found Trombi in indirect civil contempt for violating lawful orders to attend the court. In one of the cases, jurors and attorneys in DUI court had twice been made to wait because the defendant was not timely transported, and in two other cases, defendants were not timely transported to their sentencing hearings. Additionally, twenty-five de-

---

1. We cite the current version of the statute because the portions material to this opinion have remained unchanged.

fendants missed their status conferences on August 20, 2009 because they were not delivered to the courtrooms. Noting that all sanctions would be imposed against Trombi as a representative of MCSO, the court ordered him to pay by October 16, 2009 designated sums to the defendants, defense attorneys, prosecutors, and jurors in those cases in which contempt was found. The court explained that the payments to defendants were for "the delay caused by MCSO's failure to timely transport [them]," and the payments to attorneys and jurors were for "the inconvenience occasioned by having to wait."

¶ 11 Judge Donahoe further ordered Trombi to pay to the superior court the amount of $2,000, for "the disruption in the administration in [sic] justice, wasted court time caused by the failure to abide by the court's lawful orders and as discipline for failing to obey the lawful orders of the court." As to this payment only, Judge Donahoe specified a purge condition, ordering that Trombi would be relieved of making the $2,000 payment by "presenting to this Court before October 16, 2009, an agreement signed by an authorized representative of MCSO that absent extraordinary circumstances (1) MCSO will obey all lawful orders of the court for timely delivery to court of inmates in the custody of the Sheriff, and (2) that MCSO will obey the requirement of A.R.S. § 11–441(A)(4) to attend the court each business day with sufficient personnel to assure the timely delivery of all jail inmates to their scheduled court appearances and trials."

¶ 12 Trombi's request for a stay of the contempt order was denied by the superior court.[2] His motion to consolidate the cases in which he was found in contempt was granted and this special action followed. Trombi has presented two issues for our review: (1) whether the court had authority to conduct the contempt proceedings in the manner described above, and (2) whether the sanctions imposed were improper because they were in fact criminal contempt sanctions entered in violation of Ariz. R.Crim. P. 33. Trombi has not sought review of the merits of the individual findings of contempt.

¶ 13 By order filed October 30, 2009, we permitted Judge Donahoe, as the respondent judge, to file a response. *See Riley, Hoggatt & Suagee, P.C. v. English,* 177 Ariz. 10, 14, 864 P.2d 1042, 1046 (1993); *Dunn v. Superior Court (Samaritan Health Serv.),* 160 Ariz. 311, 314, 772 P.2d 1164, 1167 (App.1989).

## JURISDICTION

¶ 14 We may accept special action jurisdiction when there is no "equally plain, speedy, and adequate remedy by appeal." Ariz. R.P. Spec. Act. 1(a). The sanctions at issue are presented as civil contempt orders, and such orders are not appealable. *Berry v. Superior Court (Desert Holding & Inv.),* 163 Ariz. 507, 508, 788 P.2d 1258, 1259 (App.1989). In the exercise of our discretion, we therefore accept special action jurisdiction.

## DISCUSSION

### I. Jurisdiction and Inherent Authority

¶ 15 Trombi argues that Judge Donahoe acted in excess of his jurisdiction by ordering other judges to issue orders to show cause, and by violating the constitutional principle of separation of powers. We disagree.

¶ 16 Trombi first contends that Judge Donahoe improperly directed other judges to make specific rulings. In support of that contention, he relies on a comment that Judge Donahoe made at the hearing: "I'm alerting you to the fact that all the judicial officers have been instructed if they don't get—if the defendants are unreasonably late or if they don't get transported at all, to issue an order to show cause." At oral argument on this special action, Trombi's counsel further asserted that Judge Donahoe himself had drafted the language to be used in those orders to show cause.

¶ 17 As an initial matter, we note that Trombi has provided no evidence that Judge Donahoe issued an order that *required* other judges to issue orders to show cause. Based on the record before us, we find that no such abuse of authority occurred. An order by a presiding judge that instructs other judges to

**2.** Trombi did not seek a stay of the contempt    ruling in this court.

consider the use of a procedural device—here, orders to show cause—is nothing more than a case management order and is well within the presiding judge's general administrative authority under Ariz. R. Sup.Ct. 92. Judge Donahoe did not purport to require other judges to make decisions in any specific way in any case, and Trombi has made no showing that the judges of the criminal department were divested of their individual discretion to determine when the issuance of an order to show cause was warranted.

¶ 18 Trombi next contends that Judge Donahoe did not have jurisdiction to entertain or decide orders to show cause regarding contempt in cases to which he was not assigned, and that the court exceeded its inherent power.

¶ 19 Jurisdiction was not lacking here. The superior court has original and concurrent subject matter jurisdiction over all criminal cases in Arizona. Ariz. Const. art. VI, § 14(4); A.R.S. § 12–123(A) (2003). As Judge Donahoe noted in his ruling, the court also has statutory authority to redress contempt. See A.R.S. § 12–864.

¶ 20 Pursuant to A.R.S. § 11–441(A)(4), a judge may order the sheriff to attend court proceedings.[3] And pursuant to A.R.S. § 12–864, the superior court may find the failure to obey such an order constitutes civil contempt, punishable in conformity with "the practice and usage of the common law." The court may also find a person in criminal contempt pursuant to A.R.S. § 12–63; the procedure for criminal contempt proceedings is prescribed by Ariz. R.Crim. P. 33.[4]

¶ 21 Under the holding by this court in *Arpaio v. Baca*, 217 Ariz. 570, 177 P.3d 312 (App.2008), Judge Donahoe had inherent authority to conduct the contempt proceedings for the various cases in a single hearing. In *Baca*, we were asked to decide whether the criminal presiding judge had the procedural authority to conduct a joint hearing for all cases in which an in-custody defendant had filed a motion to restore a previous privileged

visitation schedule at jail facilities. *Id.* at 576, ¶ 17, 177 P.3d at 318. We noted that no criminal rule forbids the limited consolidation of cases for the purpose of resolving a common ancillary issue not directly related to the merits of the cases. *Id.* at ¶ 18. We held:

> While the administrative authority granted presiding judges by [Ariz. R. Sup.Ct.] 92 may not *alone* be enough to support the broad interpretation urged by defendants, the limited hearing conducted by Judge Baca did not require her to hear any evidence or make any rulings directly impacting the merits of the various cases. Instead, the purpose of the joint hearing was to resolve as expeditiously as possible an urgent ancillary issue impacting the named defendants' constitutional right to communicate with their attorneys in cases pending before the superior court. Because a superior court judge has inherent authority to conduct such proceedings and issue such orders as are necessary to the complete administration of justice, we believe Judge Baca, in her capacity as presiding criminal judge, had inherent authority to schedule a consolidated hearing for the limited purpose of receiving evidence and ruling on the privileged visitation issue.

*Id.* at ¶ 19 (internal citations omitted). Here, the joint hearing conducted by Judge Donahoe served the limited purpose of resolving a common ancillary issue: the failure of MCSO to comply with Judge Baca's order to timely transport in-custody defendants to their scheduled court proceedings. The hearing did not require Judge Donahoe to hear evidence or make rulings directly impacting the merits of the cases. We therefore conclude that Judge Donahoe acted well within his administrative authority in conducting the consolidated hearings.

## II. Separation of Powers

¶ 22 Trombi next argues that Judge Donahoe violated the separation of powers doctrine because his ruling "micromanag[es]

---

3. A.R.S. § 31–225 (2002) also provides for the transport of state prisoners by the sheriff upon order of the court.

4. Courts also have inherent contempt power. *Owen v. City Court of City of Tucson*, 123 Ariz. 267, 268, 599 P.2d 223, 224 (1979) (holding that in addition to statutory contempt powers, city courts have inherent contempt power).

the functions of the county jails" and usurps authority statutorily assigned to the executive branch.[5]

¶ 23 Pursuant to Article 3 of the Arizona Constitution, the powers of the state government are divided into separate and distinct legislative, executive, and judicial departments, and "no one of such departments shall exercise the powers properly belonging to either of the others." Citing *Judd v. Bollman,* 166 Ariz. 417, 419, 803 P.2d 138, 140 (App.1991), Trombi argues that pursuant to the separation of powers doctrine, courts have limited authority to interfere with a sheriff's statutory duty under A.R.S. § 11–441(A)(5) to maintain and operate county jails.

¶ 24 Here, however, it is the sheriff's duty under A.R.S. § 11–441(A)(4) to attend the court, not the sheriff's power under A.R.S. § 11–441(A)(5) to operate the jails, that is at issue. No court order instructed MCSO to manage the jails or inmate transportation in any particular manner. Judge Baca's order did not "micromanage" the means—it merely directed a simple result: the timely appearance of inmates. The management of the jails and methods of achieving compliance with the court's statutorily authorized order were left where they belonged—in the sole control of the sheriff. In A.R.S. § 11–441(A)(4), the Legislature (1) expressly granted to the judiciary the authority to require the sheriff to attend the court, and (2) required the sheriff to "obey lawful orders and directions issued by the judge." As we noted in *Baca,* the sheriff acts as an officer of the court in carrying out that duty. 217 Ariz. at 579, ¶ 27, 177 P.3d at 321; *see also Clark v. Campbell,* 219 Ariz. 66, 72, 193 P.3d 320, 326 (App.2008). The court has jurisdiction to control and discipline acts that the sheriff commits while acting as an officer of the court.[6] *Id.* We therefore conclude that

the doctrine of separation of powers was not offended by Judge Donahoe's ruling.

### III. Contempt

¶ 25 Trombi finally argues that Judge Donahoe impermissibly imposed criminal contempt sanctions after conducting a civil contempt proceeding. We agree in substantial part with Trombi in this regard.

¶ 26 A contempt sanction is considered civil if it either "coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained." *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 829, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994) (alterations in original) (quoting *United States v. United Mine Workers of Am.,* 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947)). Compensatory civil contempt sanctions are intended to benefit the complainant, and are therefore paid to the complainant. *United Mine Workers of Am.,* 330 U.S. at 304, 67 S.Ct. 677; *see also Hicks ex rel. Feiock v. Feiock,* 485 U.S. 624, 631–32, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Compensatory sanctions must be based upon evidence of the complainant's actual loss. *United Mine Workers of Am.,* 330 U.S. at 304, 67 S.Ct. 677. Coercive civil contempt requires that the contemnor be given an opportunity to avoid punishment through compliance. *Bagwell,* 512 U.S. at 829, 114 S.Ct. 2552. By contrast, a contempt sanction is considered criminal if it is imposed solely to punish a past act and vindicate the authority of the court, and cannot be avoided through compliance. *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 441–43, 31 S.Ct. 492, 55 L.Ed. 797 (1911).

¶ 27 In his response brief, Judge Donahoe argues that he imposed sanctions

---

5. Pursuant to the Arizona Constitution, each county has an elected sheriff whose duties, powers, and qualifications are as prescribed by law. Ariz. Const. art. XII, §§ 3, 4.

6. At oral argument before this court, Trombi's counsel argued that in one instance, compliance with the court's order to transport 123 in-custody defendants on August 20, 2009 for morning calendar was impossible because the appropriate

holding area is designed to hold only 110 people. That issue is beyond the scope of this special action, but we acknowledge that when strict compliance with a court's order to attend the court would be impossible, failure to comply cannot constitute contempt. We note, however, that contempt may still be found in such a situation when substantial compliance is not attempted in good faith.

both to compensate and to coerce. He contends that the fines Trombi was ordered to pay to defendants, attorneys, and jurors were imposed to compensate those individuals for the inconvenience they suffered as a result of MCSO's failure to comply with the court's orders. But the defendants, attorneys, and jurors to whom the fines were to be paid were not complainants in the contempt proceeding, and therefore were not eligible to receive compensation. Moreover, there is no indication in the record that the amounts awarded to them were based upon evidence of their actual losses.[7] We therefore cannot agree that these fines were compensatory civil contempt sanctions.

¶ 28 Nor do we agree that the fines payable to defendants, attorneys, and jurors were coercive civil contempt sanctions. Trombi was given no opportunity to reduce or avoid those fines through future compliance. He was, however, given the opportunity to avoid the $2,000 fine payable to the court. Although Judge Donahoe's ruling indicated that the $2,000 fine was imposed in part as "discipline," Trombi was given the opportunity to avoid the fine by entering an agreement to comply with the court's orders in the future.[8] We conclude, therefore, that the $2,000 fine payable to the court was a coercive civil contempt sanction issued under the appropriate procedure. Indeed, at oral argument, Trombi's counsel conceded that the $2,000 fine was in the nature of a civil contempt sanction. We uphold that civil contempt sanction, although we note that the date for Trombi's opportunity to avoid the fine through compliance has now passed.

¶ 29 Because the other fines, however, cannot be classified as civil contempt sanctions, we hold that they were in the nature of criminal contempt sanctions. Before such sanctions can be imposed, the procedures prescribed by Ariz. R.Crim. P. 33 must be followed.[9] Moreover, the court must find beyond a reasonable doubt that the accused contemnor acted willfully. *Riley v. Superior Court,* 124 Ariz. 498, 499, 605 P.2d 900, 901 (App.1979).

¶ 30 Though the hearing conducted in the individual cases did not run afoul of the jury right contained in Ariz. R.Crim. P. 33 where the sanctions imposed totaled less than $300, the court did not employ the rigorous burden of proof necessary to support criminal contempt sanctions under *Riley.* Imposition of a fine of any amount as a criminal contempt sanction required the court to find beyond a reasonable doubt that Trombi's contemptuous conduct was willful. This it did not do. The court also noted that a showing of willfulness was not required, which is a correct legal proposition only in the arena of civil contempt. Because the finding expressly applied the standard of proof of "clear and convincing evidence," which is a lesser standard than required for criminal contempt, we cannot infer from the language of the ruling that the court nevertheless found the required element of willfulness by the necessary burden of proof.

## CONCLUSION

¶ 31 Judge Donahoe, as the criminal presiding judge, had inherent and statutory authority to conduct a consolidated hearing on orders to show cause regarding contempt that were issued in multiple cases by criminal department judges. The orders to show cause were based on MCSO's failure to timely transport in-custody defendants to their scheduled court appearances as ordered by

---

7. At oral argument before this court, counsel for Judge Donahoe argued, without citation to authority, that such proof was not necessary here because the amounts of the individual awards were "token." We find that argument unpersuasive. The entire purpose of compensation is to provide a remedy that correlates in magnitude to the harm suffered. Where such a correlation cannot be established, a sanction—of whatever amount—is not compensatory in nature.

8. The purge condition provided that any "authorized representative" of MCSO could enter the agreement—Trombi was not specifically named. Although all sanctions were imposed against Trombi as an MCSO representative, the court appropriately recognized in styling the purge condition that Trombi's authority to enter the required agreement may have been limited.

9. As the Supreme Court noted in *Bagwell,* greater procedural protections may be required for criminal contempt sanctions. 512 U.S. at 831, 114 S.Ct. 2552.

the court pursuant to its express statutory authority under A.R.S. § 11–441(A)(4). We therefore conclude that the order compelling timely transport and the orders to show cause were valid.

¶ 32 We further conclude that all but one of the contempt sanctions imposed by Judge Donahoe were criminal in nature. Regarding those criminal contempt sanctions, Judge Donahoe did not find beyond a reasonable doubt that Trombi had engaged in willfully contemptuous conduct. We therefore uphold the civil contempt sanction to pay the court $2,000, but vacate the remaining sanctions, without prejudice to further proceedings consistent with this opinion.

CONCURRING: LAWRENCE F. WINTHROP and MICHAEL J. BROWN, Judges.