NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

JAMES CASKEY, *Petitioner/Appellant*,

*v.*

STEPHANIE BATTANI, *Respondent/Appellee*.

No. CV 13-0024 and CV 13-0334 (Consolidated)
FILED 5-15-2014

Appeal from the Superior Court in Maricopa County
No.   FC2011-090177
The Honorable John R. Hannah, Judge

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART**

COUNSEL

James Caskey, Tempe
*Petitioner/Appellant*

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Maurice Portley and Judge Andrew W. Gould joined.

**W I N T H R O P**, Judge:

¶1            James Caskey ("Father") appeals from a decree of dissolution and post-decree orders.  Father also asks this court to exercise special action jurisdiction and grant relief from two contempt orders.  For the reasons that follow, we (a) accept special action jurisdiction, but decline to grant relief from the contempt orders, and (b) reverse and remand the child support order, but affirm all other provisions in the decree and post-decree orders.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2            Father and Stephanie Battani ("Mother") have four minor children.  Father filed a petition for dissolution of marriage with children in January 2011.  The family court appointed Brian Yee, Ph.D., to conduct a custody evaluation and appointed Frank Pankow to conduct a business evaluation of Father's mortgage brokerage business.

¶3            The temporary orders awarded the parties joint legal custody of the four children and equal parenting time.  The court also ordered:

> that neither parent may discuss any aspect of this litigation with the children or in their presence, or involve the children in any way in conflicts between the parents, except by assuring the children that the parents are trying to work out appropriate arrangements so that the children can have frequent and regular access to both parents.  The parents are likewise prohibited from taking any action, or making any statement to the children or to any third party, that has the purpose or effect of disparaging the other parent or harming the other parent's relationship with the children.  This order will be enforced through court sanctions including contempt if necessary.

¶4            Mother and the oldest child had two confrontations in August and September 2011.  As a result, the parties agreed that the oldest child should live with Father.  In November 2011, Mother filed a request for an order to show cause for contempt alleging Father had (a) denied her any parenting time with the oldest child since August 31, 2011; (b) disparaged Mother to the children; (c) told the children of his intent to turn off the utilities to the marital home to "leave Mother in the dark"; (d) disrupted Mother's parenting time with phone calls and invitations to

spend time with Father; and (e) blocked Mother's number from the oldest child's phone. Father denied interfering with Mother's parenting time with the oldest child and claimed the child blocked Mother's number.

¶5 The court ordered conciliation services to interview the four children. The conciliation services report was dated February 10, 2012, but the court and parties did not receive the report until four days before the April 2, 2012 trial. When the family court received the report, Father was *sua sponte* ordered to appear on April 11, 2012 and show cause why he should not be held in contempt for violating the temporary order. After receiving the report, Mother petitioned for sole custody of the children and argued that the conciliation services report established that Father was in contempt of the court's temporary order.

¶6 At the conclusion of trial, the court found Father in contempt for his alienating conduct regarding the parties' oldest child. The court reserved ruling on how Father could purge the contempt. The decree subsequently declared that Father shall purge the contempt finding by fully participating in and paying for the cost of therapeutic counseling for the oldest child as well as the cost for both parties to complete a parenting course. Father was later found in contempt a second time for failing to pay the therapist's fees.

¶7 The decree awarded Mother sole legal custody of the four children. Father was awarded parenting time every other weekend and one evening a week, except as to the oldest child who lived with Father; Mother's parenting time with the oldest child would be based on the therapist's recommendations to the court. The court ordered that the oldest child participate in therapeutic intervention, to be paid for by Father.

¶8 The family court confirmed child support, including comparative responsibility for medical expenses, and also awarded Mother spousal maintenance of $500 a month for thirty-six months. The court awarded an additional $1,000 a month for seventy-two months in spousal maintenance to "represent an equitable re-allocation of marital assets." The court also awarded Mother $16,746.27 in attorneys' fees and costs based on a disparity in the parties' resources and Father's unreasonable conduct in "stonewalling" financial discovery. Father filed an unsuccessful motion for new trial.

¶9 In April 2013, the court held a hearing on Mother's post-decree petition to enforce medical reimbursement, among other issues.

Specifically, Mother sought to have Father pay his share of the children's orthodontic expenses. The court ordered an increase of the child support order by $150 a month to account for this expense.

**¶10**            Father filed a timely notice of appeal from the decree, the denial of his motion for new trial, the award of attorneys' fees, the order clarifying the division of property, and the modification of child support.[1] Father also requests that this court exercise special action jurisdiction and grant relief from the contempt orders. We have jurisdiction over the appeal pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1), (2), (5)(a) (West 2014).[2] We address the special action jurisdiction below.

## DISCUSSION[3]

I.      *Special Action Jurisdiction over Contempt Orders*

**¶11**            Father seeks relief from the contempt sanctions imposed on April 11, 2012 and January 24, 2013. Civil contempt actions are not appealable. *Berry v. Superior Court*, 163 Ariz. 507, 508, 788 P.2d 1258, 1259 (App. 1989). "A special action petition is the appropriate method to challenge a civil contempt order . . . ." *Stoddard v. Donahoe*, 224 Ariz. 152, 154, ¶ 7, 228 P.3d 144, 146 (App. 2010) (citation omitted). In the exercise of our discretion, we elect to treat Father's appeal from the contempt orders as a petition for special action, *see State ex rel. Dep't of Econ. Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 18, 66 P.3d 70, 73 (App. 2003) (citation omitted), and we accept jurisdiction.

---

[1]      Although there have been filings and rulings since the opening brief was filed on August 24, 2013, these subsequent rulings are not properly before this court. *But see* ¶ 28-29, *infra*.

[2]      We cite the most recent version of the statutes and rules, except where noted, because no revisions relevant to this appeal have since occurred.

[3]      Mother did not file an answering brief. Although we may construe this as a confession of error, we exercise our discretion to waive confession of error and address the merits of Father's appeal. *See Gibbons v. Indus. Comm'n,* 197 Ariz. 108, 111, ¶ 8, 3 P.3d 1028, 1031 (App. 1999).

### A. First Finding of Contempt

**¶12** Father argues the 2012 contempt proceedings violated his right to due process. Due process requires "advance notice of the charge, an opportunity to be heard, and [to] present testimony in his own behalf." *See Ong Hing v. Thurston*, 101 Ariz. 92, 99, 416 P.2d 416, 423 (1966).

**¶13** The 2012 contempt proceedings were based on a report that Father violated a provision of the temporary orders precluding both parties from harming the other parent's relationship with the children. The family court notified Father on March 29, 2012 that he would need to appear at the trial on April 11, 2012 to show why he was not in violation of the temporary order.[4] The April 2, 2012 transcript indicates the court provided Father with a copy of the order to show cause.

**¶14** Father also claims that he did not have sufficient time to defend against the allegations in the conciliation services report. However, Father did not seek a continuance or object when the court set the contempt matter with the dissolution trial. Instead, on the first day of trial, Father stated there was no problem addressing the contempt matter at the next trial date, which was nine days later. As a result, Father cannot now claim that he did not have adequate time to refute the report. Thus, we find due process was satisfied.

**¶15** Father also challenges the family court's finding of contempt by contending the court based its finding on conduct that occurred before the temporary order was in effect. However, the court's contempt finding was based on Father's conduct that "encouraged and nurtured [the oldest child's] estrangement from [Mother]" and not merely the comments Father made prior to the temporary orders. In the record, Father admitted he did not encourage the oldest child to unblock Mother's number from his phone and he argued that the issues between Mother and the oldest child were all Mother's fault. Mother described several instances of Father disparaging her to the children or attempting to alienate her from the children after the temporary order. Mother testified she has had no contact with the oldest child since he moved in with Father except for one phone call in December 2011 when the child, with Father present, told Mother he wanted nothing to do with her.

---

[4] The order also contained the mandatory language from Arizona Rule of Family Law Procedure 92(B) and (C).

¶16        As a sanction for the contempt finding, the court ordered Father to fully participate in and pay for the oldest child's therapeutic counseling. Father contends he has no way to remedy this "perpetual" purge order and the order improperly relies on third-party compliance. We disagree. Father alone is capable of satisfying the purge order by paying the therapeutic interventionist fees. The length of the therapy is not "perpetual" as Father contends. Father can help accelerate the reunification process by cooperating with the therapist and encouraging the child in the process. Furthermore, the order will necessarily terminate when the child turns eighteen in 2016.

### B.        Second Finding of Contempt

¶17        Father contends the sanction associated with the family court's January 2013 finding of contempt was impermissibly criminal in nature. A criminal contempt sanction is "imposed solely to punish a past act and vindicate the authority of the court, and cannot be avoided through compliance." *Trombi v. Donahoe*, 223 Ariz. 261, 267, ¶ 26, 222 P.3d 284, 290 (App. 2009) (citation omitted).

¶18        In January 2013, Father was found in contempt for failing to pay the therapeutic interventionist fees he was ordered to pay as a purge for his prior contempt. The court ordered Father incarcerated until he paid the $2,500 therapeutic interventionist fees. Father immediately gave the court $2,500 cash, and the court purged Father's contempt. Contrary to Father's assertion, he was never incarcerated, nor was the parties' oldest child released to Mother's custody. Because Father was able to avoid incarceration by following the court order to pay the therapist's fees, the sanction was not criminal. We also conclude the monetary sanction was within the family court's discretion. *See Hays v. Gama*, 205 Ariz. 99, 103, ¶ 20, 67 P.3d 695, 699 (2003) (upholding order that contemptuous parent pay therapist's fees because order was narrowly tailored to address specific contempt, and did not affect the family court's ability to consider the best interests of the child). We decline Father's request for special action relief and affirm the contempt sanctions.

### II.        Parenting Time Award

¶19        Father contends the reduction in his parenting time contained in the decree − as compared to the temporary order − is not supported by the evidence. "We will not disturb the family court's . . . parenting time orders absent an abuse of discretion." *Nold v. Nold*, 232 Ariz. 270, 273, ¶ 11, 304 P.3d 1093, 1096 (App. 2013) (citation omitted). In

this case, there was evidence in the record that Father interfered with the children's relationship with Mother after the entry of the temporary orders. The court noted the record demonstrated that the equal parenting time orders were a failure in light of the parties' inability to co-parent, indicating changed circumstances. Accordingly, we find no abuse of discretion in the decree's parenting time orders.

III.  *Awarding Mother Sole Legal Custody*

**¶20**　　　　Father argues the family court abused its discretion in awarding Mother sole custody of the children.[5] The court awarded sole custody to Mother after finding Father's conduct threatened the children's relationship with Mother and Father failed to recognize or take responsibility for this conduct.

**¶21**　　　　Regarding this issue, Father repeats the arguments he made challenging the parenting time award. As noted above, the circumstances changed after the court entered temporary orders that served as a "test run" for joint custody. The court's conclusion that the test run was a failure is supported by the record. *See* ¶ 19, *supra*.

**¶22**　　　　Father also argues the family court violated its duty to consider all evidence bearing on the children's best interests when it denied Father's motion to release Mother's mental health records. *See Hays*, 205 Ariz. at 103, ¶ 21, 67 P.3d at 699 (holding courts shall consider all relevant evidence relating to the children's best interests in custody disputes). Father's motion to release the records stated that if the court did not release the records to him, an acceptable alternative included releasing Mother's mental health records to Dr. Yee, the court-appointed custody evaluator. Mother allowed Dr. Yee to review her mental health records. Although Dr. Yee's report states he reviewed materials provided by counsel, it does not specifically identify those materials. Father had sufficient time before trial, however, to clarify whether Dr. Yee reviewed Mother's mental health records. We will presume, absent evidence to the

---

[5]　　　　We note Father refers to "sole decision making" which is the terminology used for cases decided after January 1, 2013. *See* A.R.S. § 25-401(6) (Supp. 2013). The parties' decree was issued July 24, 2012. We use the language in effect at the time the decree was entered. Thus, the term "sole legal custody" is used to describe the parents' legal rights in this case. *See* A.R.S. § 25-402(5) (2007).

contrary, that Dr. Yee's report was based on a full review of the records provided to him, including Mother's mental health records.

¶23          Dr. Yee's report does not indicate Mother had any mental health issues that were relevant to the custody evaluation and recommendation.  The family court noted there were no significant issues regarding either parent's mental health.  *See* A.R.S. § 25-403(A)(5).  Accordingly, we find no abuse of discretion and affirm the award of sole legal custody to Mother.

IV.     *Spousal Maintenance Award and Property Division*

¶24          Father challenges the equalization portion of the spousal maintenance payment and the value the court attributed to the community business.   We review the apportionment of community property and the award of spousal maintenance for an abuse of discretion. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, 348, ¶¶ 5, 14, 972 P.2d 676, 679, 681 (App. 1998) (citations omitted).

¶25          Father contends the court's finding of the value of the business is erroneous because the cash attributed to the business was actually an advance from the home equity line of credit on the marital home.  The court awarded Mother spousal maintenance of $500 a month for thirty-six months.  The court awarded an additional $1,000 a month for seventy-two months to "represent an equitable re-allocation of marital assets."  The equitable re-allocation portion of the spousal maintenance award was non-modifiable and will terminate upon Mother's death or remarriage.  The court justified the equitable re-allocation award based on two findings:   (1) the marital home had a negative equity value of approximately $225,000 because a $493,000 community property home equity line of credit negated the $270,000 property value and (2) the community business had a value of $362,778 at the end of the marriage.  Adding these values left $137,778 in net community property to be divided between the parties.  To equalize this property, the court ordered Father to pay Mother $1,000 a month for seventy-two months because Father was awarded the marital home and the community business.

¶26          Father testified he historically used cash advances from the home equity line of credit to create a cash balance on the books of the community business.  Based on the records Father disclosed, Pankow, the court-appointed business evaluator, testified the cash in the business decreased, but there was no evidence the debt from the home equity line of credit was ever repaid.  The evidence established that between the time

the marriage ended and the end of 2011, the community business cash balance decreased by approximately $350,000 and the "loans from shareholder" account decreased by over $382,000. There was no evidence that the business repaid the home equity line of credit debt as Father claimed; however, $350,000 cash was taken out of the business in 2011. Father's testimony varied as to how that cash was spent. Because Father was unable to establish how the cash removed from the community was spent, the family court's finding that Father concealed those funds is supported by the record. *See Gutierrez*, 193 Ariz. at 346-47, ¶ 7, 972 P.2d at 679-80 (holding that spouse spending community funds bears burden of proving funds were spent for the benefit of the community). Therefore, we find no abuse of discretion in the court's determination of value of the business or its award of spousal maintenance.

**¶27** Father also contends the family court's property allocation failed to take into account $83,511 in community property spent pendente lite on Mother's behalf. The family court found these expenses were paid with funds from the home equity line of credit and treated the home equity line of credit as a community debt. The property allocation thus took into account Mother's share of this community debt. Because Father failed to meet his burden of showing these expenses were paid with the missing cash, which would affect the value of the community business, we find no abuse of discretion.[6]

> V.    *Child Support Order*
>
> A.    *Child Support with Divided Physical Custody*

**¶28** Father argues the child support order fails to reflect that Mother does not have any parenting time with the oldest child. Father had not raised this argument prior to filing his opening brief on appeal; there is no pleading or court order addressing this issue until an order filed January 29, 2014, wherein the family court denied Father's request for a modification of child support, finding no changed circumstances since the entry of the decree. Although Father did not appeal from this 2014 order, we consider this argument properly raised because Father filed a timely appeal from the decree and child support order which

---

[6] Father also argues that the family court erroneously allocated the home equity line of credit debt twice. We find no double allocation or offsets of the home equity line of credit debt.

contained the alleged error. We review the family court's decision as to the amount of child support for an abuse of discretion, *In re Marriage of Robinson*, 201 Ariz. 328, 331, ¶ 5, 35 P.3d 89, 92 (App. 2001) (citation omitted), and its interpretation of the Child Support Guidelines *de novo*, *see Clay v. Clay*, 208 Ariz. 200, 202, ¶ 5, 92 P.3d 426, 428 (App. 2004) (citation omitted).

**¶29** Section 16 of the Child Support Guidelines specifically provides for cases in which parents share divided physical custody of multiple children. A.R.S. § 25-320 app. ("Guidelines"). Under Section 16,

> When each parent is granted physical custody of at least one of the parties' children, each parent is obligated to contribute to the support of all the children. However, the amount of current child support to be paid by the parent having the greater child support obligation shall be reduced by the amount of child support owed to that parent by the other parent.

Guidelines, § 16.

**¶30** In this case, the family court ordered Father to pay child support based on Mother's initial designation as the primary residential parent for the four children and Father's eighty days of parenting time with the four children. However, the decree temporarily suspended Mother's parenting time with the parties' oldest child, who lives with Father. We conclude the child support order erroneously applied the Guidelines based on the facts as they existed at the time of the decree. Accordingly, we reverse the child support order and remand for recalculation of the total child support obligation pursuant to Section 16 of the Guidelines.

## B. *Notice of Child Support Modification Hearing*

**¶31** Father also argues the family court abused its discretion by modifying the child support order on April 26, 2013 without providing adequate notice of the modification hearing. The modification reflected a $150 month increase in child support to cover the cost of the children's orthodontic expenses. On February 1, 2013, Mother filed a petition to enforce the medical expense reimbursement provision of the decree. Father was ordered to appear at an April 5, 2013 hearing on this petition. Father filed two pleadings in response to Mother's petition. Father appeared at the hearing with evidence to present and did not object to lack of notice or claim that he was in anyway unprepared to address

Mother's petition to enforce. Thus, we reject Father's contention that he was not given adequate notice regarding the medical expense reimbursement issue and affirm the order.

VI.     *Division of Personal Property*

¶32     Father argues the family court failed to enforce the decree's property division when it later awarded each party the personal property in his or her possession, because the subsequent award resulted in an inequitable division of personal property. Pursuant to A.R.S. § 25-318(A), community property shall be divided equitably. "The family court has broad discretion in determining what allocation of property and debt is equitable under the circumstances." *In re Marriage of Inboden*, 223 Ariz. 542, 544, ¶ 7, 225 P.3d 599, 601 (App. 2010) (citation omitted). We review this allocation for an abuse of discretion. *Id.*

¶33     The decree ordered Mother to create a list of personal property that Father would review and revise if necessary. The parties would then alternate choosing property from the list. Alternatively, the decree ordered the parties to choose a mutually acceptable third party to create a property inventory from which the parties would then choose. Thus, the terms of the decree ordered an equal division of the personal property.

¶34     After several months in which the parties were unable to accomplish this task together, the family court held an evidentiary hearing to resolve the matter. At the hearing, Father alleged Mother had all the personal property in her possession since the decree, and that upon vacating the marital home she took items that belonged to Father and damaged the property that was left behind. Mother denied these allegations. A neighbor testified that the house was not damaged when she saw it after Mother moved out and that Mother left furniture in the house for Father.

¶35     Father contends the family court modified the decree in violation of A.R.S. § 25-327(A), which provides that the property allocation in a decree may not be modified "unless the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." On these facts, however, we disagree that the family court modified its property allocation and conclude that the order enforced the prior property division. Because the family court is in the best position to determine witness credibility and weigh conflicting evidence, *Gutierrez*, 193 Ariz. at 347, ¶ 13, 972 P.2d at 680, we defer to the

family court's findings regarding Mother's reasonable attempts to divide the property pursuant to the decree and Father's uncooperative conduct. The testimony of Mother and the neighbor supports the court's conclusion that awarding each party the property in his or her possession was equitable under the circumstances. We therefore find no abuse of discretion.

### VII. *Attorneys' Fees*

**¶36** Father argues the portion of attorneys' fees awarded to Mother for Father's unreasonable conduct was an abuse of discretion. We will not disturb the family court's discretionary award of attorneys' fees absent an abuse of that discretion. *Gutierrez*, 193 Ariz. at 351, ¶ 32, 972 P.2d at 684.

**¶37** The decree found Father acted unreasonably throughout the litigation, "specifically by stonewalling Mother's attempts to determine his income and Mr. Pankow's effort to place a value on his business." On appeal, Father incorporates his filing in the family court objecting to Mother's fee application. Father's objection did not address the reasonableness of his conduct throughout the litigation, but only objected to the form of Mother's fee application. Thus, Father failed to properly develop the argument that his conduct did not warrant an award of fees. Opening briefs are required to present arguments setting forth the appellant's position, with citations to authority, statutes, and the record. ARCAP 13(a)(6). Failure to do so may constitute waiver. *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62, 211 P.3d 1272, 1289 (App. 2009) (citation omitted). We conclude that Father waived the issue of whether he acted unreasonably thereby justifying the award of attorneys' fees.

### CONCLUSION

**¶38** We exercise special action jurisdiction, but decline to grant relief from the contempt orders. We reverse the child support order and remand for recalculation based on the oldest child living with Father. In all other respects, we affirm the decree and orders on appeal.



Ruth A. Willingham · Clerk of the Court
F I L E D : MJT